SULLIVAN, HILL, LEWIN, REZ & ENGEL
A Professional Law Corporation
James P. Hill, CA SBN 90478 (Pro Hac Vice)
Jonathan S. Dabbieri, CA SBN 91963 (Pro Hac Vice)
Elizabeth E. Stephens, NV SBN 5788
228 South Fourth Street, First Floor
Las Vegas, NV 89101
Telephone: (702) 382-6440
Fax Number: (702) 384-9102

Attorneys for Chapter 7 Trustee,
William A. Leonard, Jr.,
and Commercial Mortgage Managers, Inc.

**Electronically Filed: 9/19/14**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>ASSET RESOLUTION, LLC,<br><br>Debtor. | CASE NO. BK-S-09-32824-RCJ (Lead Case)<br>Chapter 7<br><br>Jointly Administered with Case Nos.:<br>BK-S-09-32831-RCJ; BK-S-09-32839-RCJ;<br>BK-S-09-32843-RCJ; BK-S-09-32844-RCJ;<br>BK-S-09-32846-RCJ; BK-S-09-32849-RCJ;<br>BK-S-09-32851-RCJ; BK-S-09-32853-RCJ;<br>BK-S-09-32868-RCJ; BK-S-09-32873-RCJ;<br>BK-S-09-32875-RCJ; BK-S-09-32878-RCJ;<br>BK-S-09-32880-RCJ; BK-S-09-32882-RCJ |
| WILLIAM A. LEONARD, JR., in his capacity as Chapter 7 Trustee; COMMERCIAL MORTGAGE MANAGERS, INC.<br><br>Plaintiffs,<br><br>v.<br><br>M. DONALD GRANATSTEIN, also known as MARTIN DONALD GRANATSTEIN, also known as DONALD MARTIN GRANATSTEIN; GERALD E. CADESKY<br><br>Defendants. | ADVERSARY CASE NO.<br><br>**COMPLAINT FOR MONEY**<br><br>Date: N/A<br>Time: N/A<br>Ctrm: RCJ-Courtroom 6<br>Bruce R. Thompson Federal Building<br>400 S. Virginia Street<br>Reno, NV 89501<br>Judge: Hon. Robert C. Jones |

William A. Leonard, Jr., as chapter 7 trustee of debtor Asset Resolution, LLC ("ARC" or "Asset Resolution")(Case No. 09-32824) and, as to the first claim for relief only, Commercial Mortgage Managers, Inc., allege, upon knowledge with respect to themselves and their own acts and upon information and belief as to all other matters set forth herein:

**JURISDICTION AND PARTIES**

1. On or about October 14, 2009, voluntary petitions for relief were filed on behalf of debtors Asset Resolution and 14 other related debtor entities in the United States Bankruptcy Court for the Southern District of New York under chapter 11 of the bankruptcy code (the Bankruptcy Cases).

2. Venue of the Bankruptcy Cases was subsequently transferred to the United States Bankruptcy Court for the District of Nevada.

3. This Court thereafter issued an order withdrawing the reference of the Bankruptcy Cases. The Asset Resolution Bankruptcy Cases and related proceedings are now pending in this Article III Court (Jones, C.J).

4. On or about January 29, 2010, this Court entered an order converting *nunc pro tunc* the Bankruptcy Cases from chapter 11 to chapter 7. The cases are jointly administered under the ARC Lead Case No. 09-32824-RCJ.

5. Plaintiff, William A. Leonard, Jr., (the "Trustee") is the duly appointed and acting trustee for each of the debtors in the Bankruptcy Cases.

6. Plaintiff Commercial Mortgage Managers, Inc. is a corporation duly formed under the laws of the State of California and is a plaintiff as to the first claim for relief only, and brings this action as the servicer of the loan hereinafter identified as the Timeshare Loan and on behalf of the direct lenders associated with that loan.

7. Defendant M. DONALD GRANATSTEIN, also known as Martin Donald Granatstein, also known as Donald Martin Granatstein, (Granatstein) is an individual and resident of Florida.

8. Defendant Gerald E. Cadesky (Cadesky) is an individual and resident of Ontario, Canada.

9. This Court has personal jurisdiction over the defendants under FRBP 7004(f), which provides for service of process and consequent personal jurisdiction over “any defendant with respect to a case under the bankruptcy code or a civil proceeding arising under the bankruptcy code

or arising in or related to a case under the bankruptcy code," if such jurisdiction is "consistent with the Constitution and the laws of the United States."

10. This Court has jurisdiction over this adversary proceeding pursuant to the provisions of 28 U.S.C. §§ 157 and 1334 as well as principles of supplemental jurisdiction under 28 USC § 1367(a).

11. This action is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

12. This Court is an Article III Court and no consent to litigation of the case and entry of final judgment in this Court is necessary. However, if such consent is necessary, plaintiffs hereby consent to this Court entering a final judgment in this matter under 28 U.S.C. § 157(c)(2).

13. Because this action arises in and/or relates to the Bankruptcy Cases and/or the USACM bankruptcy case, venue is proper in this Court pursuant to 28 U.S.C. §1409.

14. Venue is also proper in this Court under 28 U.S.C. §1391(a)(2) and/or (3), because a substantial part of the events or omissions giving rise to the claims occurred in Nevada and/or the defendant is subject to personal jurisdiction in this District.

**PRELIMINARY STATEMENT APPLICABLE TO ALL CLAIMS**

15. USA Commercial Mortgage ("USACM") was in the business of brokering and servicing high interest, short-term commercial loans, primarily secured by residential and commercial real estate properties. USACM loaned money at high interest rates to borrowers whose credit ratings were sufficiently poor or whose projects were sufficiently risky that money was not available to them from conventional lending sources. In a typical USACM loan transaction, a large number of individual investors (hereafter, "direct lenders" or "direct lender investors") would be grouped together by USACM, acting as a broker, to make a loan. USACM would then service the loans on the direct lenders' behalf. For its services as broker and servicer, USACM would charge a fee payable in accordance with servicer compensation provisions contained in the various loan servicing agreements ("LSAs") executed by the direct lenders, as well as other fees and compensation, all as more fully set forth in the LSAs and related loan documents.

16. Under a typical USACM loan, each of the individual direct lenders holds a fractional, beneficial interest in the loan and in the trust deed or other mortgage instruments securing the loan and encumbering real property located throughout the United States. In many instances USACM also participated as a direct lender.

17. USACM and its operating businesses ultimately unraveled as a massive interstate Ponzi scheme spearheaded by now convicted felon Joseph Milinowski and others. USACM filed for bankruptcy protection in the United States Bankruptcy Court for the District of Nevada. Following an auction in the USACM bankruptcy case, Compass USA SPE, LLC ("Compass") paid more than $50 million in cash in a bankruptcy-court supervised auction to purchase USACM's loan servicing rights, its direct lender interests in various USACM loans, and the rights and interests of its affiliated debtors (the Purchased Assets).

18. The asset sale was conducted through an auction overseen by the United States Bankruptcy Court for the District of Nevada pursuant to a Third Amended Plan of Reorganization (the "USACM Plan") confirmed in primary Case No. BK-S-06-10725-LBR (the "USACM Bankruptcy Cases").

19. Asset Resolution was (and its bankruptcy estate now is) the successor-in-interest to the Purchased Assets.

20. Compass' acquisition of the Purchased Assets was funded by Silar Advisors, LP ("Silar"), through a Master Repurchase Agreement. Compass ultimately defaulted on its obligations to Silar, and on or about September 26, 2008, Silar took control of the Purchased Assets and formed Asset Resolution, the lead debtor herein, to acquire and hold title in the Purchased Assets and to serve as loan servicer thereafter.

21. Among the USACM Loans involved in the USACM sale to Compass and subsequent transfer to Asset Resolution were the three loans relating to the Parliament House Resort or its affiliates at issue herein.

22. By order of this Court the Trustee has the right, but not the duty, to act as servicer for these loans, and therefore has standing to bring this action on behalf of the Asset Resolution Estate with respect to the Estate's interest in the loans and on behalf of the other direct lenders in each loan.

**THIS SUIT IS TIMELY**

23. As is more fully alleged below, each of the loans which are the subject of this action contains a waiver of the applicable statute of limitations. In addition, under NRS 11.350, "[w]hen the commencement of one action shall be stayed by injunction or statutory prohibition, the time of the continuance of the injunction or prohibition shall not be part of the time limited for the commencement of the action." Plaintiffs and the direct lenders have been enjoined from commencing this action or otherwise attempting to collect from the defendant under or relating to his guaranty continuously from April 13, 2006 to on or about January 29, 2010 due to various injunctions and statutory prohibitions, as described in more detail below.

24. On or about April 13, 2006, USACM and its affiliates filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Nevada. The USACM bankruptcy cases imposed an automatic stay which prohibited parties from filing suits concerning the Purchased Assets while certain LSAs remained in effect.

25. The USACM Plan of Reorganization and approval order enjoined parties from interfering with Compass' right to collect on the Purchased Assets, which included, without limitation, the power to commence and prosecute suits against the defendant under the guaranties hereinafter alleged, until the LSAs were terminated.

26. In November 2007, this Court entered a preliminary injunction (the "892 Preliminary Injunction") in the series of actions ultimately consolidated in the action styled *3685 San Fernando Lenders, LLC, et al. v. Compass USA SPE, LLC, et al.*, Case No. 2:07-cv-00892-RCJ-GWF (the "892 Case") [892 Doc. 199]. The 892 Preliminary Injunction followed issuance of temporary restraining orders entered in the USACM bankruptcy or related proceedings and supplemented the injunctive provisions of the USACM Plan and approval order. The 892 Preliminary Injunction applied to all of the holders of direct lenders in the Purchased Assets through the Court's exercise of in rem jurisdiction "over the [USACM] Loans and LSAs relating thereto, and the conveyance of title to the collateral in connection therewith." [892 Doc. 199 at 12, ¶ 15]. The 892 Preliminary Injunction enjoined the commencement of any action under or relating to defendant's guaranty due to the

"exclusive authority of Compass to act directly on behalf of the Direct Lenders as servicer. . ." [892 Doc. 199 at 4, ¶¶ 1 & 2, and at 9, ¶ 8].

27. On or about September 26, 2008, Asset Resolution replaced Compass as servicer of the USACM Loans, and the Court extended the protections and requirements of the 892 Preliminary Injunction to Asset Resolution. [AR Bk. Doc. 1915 at 26, ¶ 74].

28. The 892 Preliminary Injunction and the automatic stay applicable in the Asset Resolution Bankruptcy Cases continued to enjoin parties from commencing or otherwise prosecuting claims against the defendant under or relating to the guaranty.

29. On January 29, 2010, this Court converted the Asset Resolution Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code, nunc pro tunc as of January 19, 2010 and terminated the servicing powers of Asset Resolution under the 892 Preliminary Injunction. [AR Bk. Doc. 356]

30. On or about November 24, 2010, the Court issued its *Nunc Pro Tunc* Order re Chapter 7 Trustee's Continued Authority to Service Loans on an Interim Basis, granted the Trustee the right, but not the obligation, to act as loan servicer. [AR Bk Doc. 1312 at 2-3].

31. Notwithstanding such order, all other direct lenders remained enjoined from pursuing claims related to the Purchased Assets at least until entry, on September 6, 2012, of this Court's Agreed Order Regarding Settlement and Related Relief. [AR Bk Doc. 1915]

32. Plaintiffs are informed and believe and thereon allege that the last payment made by or on behalf of Borrower under one or more of the loans at issue herein was made on October 15, 2011.

33. This action is therefore being commenced well within the statute of limitations under Nevada law.

**FIRST CLAIM FOR RELIEF**

(THE TIMESHARE LOAN)

34. Plaintiffs incorporate the allegations of paragraphs 1 through 33, supra, as though fully set forth herein.

35. One of the USACM assets transferred to Compass, and, by the various transfers detailed above, ultimately to ARC, was an approximate 31.03% undivided interest in a fractionalized loan commonly referred to as the Timeshare Loan.

36. On or about March 24, 2004, The Gardens, LLC, a Florida limited liability company, as Borrower, made, executed and delivered to, among others, plaintiffs' predecessor in interest, (i) a loan agreement (the Timeshare Loan Agreement) dated March 24, 2004; (ii) a promissory note (the Timeshare Note) dated March 24, 2004, in the original face amount of $1,500,000; and (iii) one or more mortgages (the Timeshare Mortgages) encumbering various parcels of real property in the County of Orange, State of Florida.

37. Concurrently with the execution of the Timeshare Loan Agreement, the Timeshare Note, and the Timeshare Mortgages, defendant made, executed and delivered to, among others, plaintiff's predecessor in interest, an Unconditional Repayment and Completion Guaranty dated March 24, 2004 (the Timeshare Guaranty), whereby defendant unconditionally guaranteed, among other things, payment of all of the Borrower's indebtedness to the Direct Lenders, then existing or thereafter incurred or created.

38. Thereafter and by various additional advances and amendments, the face amount of the Timeshare Loan was increased to $5,800,000. Each additional advance and/or amendment was consented to by defendant and/or did not require defendant's consent. Defendant's obligations under the Timeshare remain in full force and effect.

39. The Timeshare Loan Agreement, Timeshare Note, Timeshare Mortgages, and Timeshare Guaranty are hereinafter collectively referred to as the Timeshare Loan Instruments. Each of the Timeshare Instruments is executed in favor of those persons (referred to as direct lenders) identified in Exhibit "A" to the Instrument.

40. Plaintiffs are informed and believes and thereon alleges that after giving credit for all payments made, the principal balance of the Timeshare Note is $4,410,583, which sum is now due and owing, together with interest thereon as allowed by law and in accordance with the terms of the Timeshare Note.

41. Included within the Timeshare Instruments is a waiver of all statutes of limitations applicable to the Borrower's debt.

42. Each of the Timeshare Instruments provides that it is to be governed by the laws of the State of Nevada and that the maker of the Instrument consents to suit in the State of Nevada and that such State is the proper venue, with *in personam* jurisdiction over the maker of the Instrument.

43. Borrower has defaulted under and breached the Timeshare Instruments by failing to pay the full sum due thereunder.

44. Defendant has defaulted under and breached the Timeshare Instruments by failing to pay the full sum due thereunder.

45. By reason of the foregoing, there is now due, owing and unpaid from defendant the sum of $4,410,583 together with interest thereon as allowed by law.

**SECOND CLAIM FOR RELIEF**

(THE GARDENS LOAN)

46. Plaintiff Asset Resolution incorporates the allegations of paragraphs 1 through 33, supra, as though fully set forth herein.

47. One of the USACM assets transferred to Compass, and, by the various transfers detailed above, ultimately to ARC, was a 100% interest in a loan commonly referred to as the Gardens Loan.

48. On or about March 31, 2006, The Gardens, LLC, a Florida limited liability company, as Borrower, made, executed and delivered to, among others, plaintiff's predecessor in interest, (i) a loan agreement (the Gardens Loan Agreement) dated March 31, 2006; a (ii) a promissory note (the Gardens Note) dated March 31, 2006, in the original face amount of $9,000,000; and (iii) one or more mortgages (the Gardens Mortgages) encumbering various parcels of real property in the County of Orange, State of Florida.

49. Concurrently with the execution of the Gardens Loan Agreement, the Gardens Note, and the Gardens Mortgages, defendants made, executed and delivered to, among others, plaintiff's predecessor in interest, an Unconditional Repayment and Completion Guaranty dated March 31, 2006 (the Gardens Guaranty), whereby defendants unconditionally guaranteed, among other things,

payment of all of the Borrower's indebtedness to the Direct Lenders, then existing or thereafter incurred or created.

50. The Gardens Loan Agreement, Gardens Note, Gardens Mortgages, and Gardens Guaranty are hereinafter collectively referred to as the Gardens Loan Instruments. Each of the Timeshare Instruments is executed in favor of those persons (referred to as direct lenders) identified in Exhibit "A" to the Instrument.

51. Plaintiff is informed and believes and thereon alleges that after giving credit for all payments made, the principal balance of the Gardens Note is $9,000,000, or such other sum as is ascertained at trial and according to proof, which sum is now due and owing, together with interest thereon as allowed by law and in accordance with the terms of the Timeshare Note.

52. Included within the Gardens Instruments is a waiver of all statutes of limitations applicable to the Borrower's debt.

53. Each of the Gardens Instruments provides that it is to be governed by the laws of the State of Nevada and that the maker of the Instrument consents to suit in the State of Nevada and that such State is the proper venue, with in personam jurisdiction over the maker of the instrument.

54. Borrower has defaulted under and breached the Gardens Instruments by failing to pay the full sum due thereunder.

55. Defendants have defaulted under and breached the Gardens Instruments by failing to pay the full sum due thereunder.

56. By reason of the foregoing, there is now due, owing and unpaid from defendants the sum of $9,000,000, or such other sum as is ascertained at trial and according to proof, together with interest thereon as allowed by law.

**THIRD CLAIM FOR RELIEF**

(THE CROSS LOAN)

57. Plaintiff Asset Resolution incorporates the allegations of paragraphs 1 through 33, supra, as though fully set forth herein.

58. One of the USACM assets transferred to Compass, and, by the various transfers detailed above, ultimately to ARC, was an approximate 5.53% undivided interest in a fractionalized loan commonly referred to as the Cross Loan.

59. On or about August 15, 2005, The Gardens, LLC, a Florida limited liability company, as Borrower, made, executed and delivered to, among others, plaintiff's predecessor in interest, (i) a loan agreement (the Cross Loan Agreement) dated August 15, 2005; a (ii) a promissory note (the Cross Note) dated August 15, 2005, in the original face amount of $2,425,000; and (iii) one or more mortgages (the Cross Mortgages) encumbering various parcels of real property in the County of Orange, State of Florida.

60. Concurrently with the execution of the Cross Note, the Cross Loan Agreement, and the Cross Mortgages, defendants made, executed and delivered to, among others, plaintiff's predecessor in interest, an Unconditional Repayment and Completion Guaranty dated August 15, 2005 (the Cross Guaranty), whereby defendants unconditionally guaranteed, among other things, payment of all of the Borrower's indebtedness to the Direct Lenders, then existing or thereafter incurred or created.

61. The Cross Loan Agreement, Cross Note, Cross Mortgages, and Cross Guaranty are hereinafter collectively referred to as the Cross Loan Instruments. Each of the Cross Instruments is executed in favor of those persons (referred to as direct lenders) identified in Exhibit "A" to the Instrument, who

62. Plaintiff is informed and believes and thereon alleges that after giving credit for all payments made, the principal balance of the Cross Note is $2,425,000 or such other sum as is ascertained at trial and according to proof, which sum is now due and owing, together with interest thereon as allowed by law and in accordance with the terms of the Cross Note.

63. Included within the Cross Instruments is a waiver of all statutes of limitations applicable to the Borrower's debt.

64. Each of the Cross Instruments provides that it is to be governed by the laws of the State of Nevada and that the maker of the Instrument consents to suit in the State of Nevada and that such State is the proper venue, with in personam jurisdiction over the maker of the instrument.

65. Borrower has defaulted under and breached the Cross Instruments by failing to pay the full sum due thereunder.

66. Defendants have defaulted under and breached the Cross Instruments by failing to pay the full sum due thereunder.

67. By reason of the foregoing, there is now due, owing and unpaid from defendants the sum of $2,425,000 or such other sum as is ascertained at trial and according to proof, together with interest thereon as allowed by law.

Wherefore, plaintiffs pray judgment against defendants as follows:

1. On the first claim for relief, for damages in the sum of $4,410,583, or such other sum as is ascertained at trial and according to proof;

2. On the second claim for relief, for damages in the sum of $9,000,000, or such other sum as is ascertained at trial and according to proof;

3. On the third claim for relief, for damages in the sum of $2,425,000, or such other sum as is ascertained at trial and according to proof;

4. On all claims for relief, for interest as provided for in the loan documents or as allowed by law; and

5. For costs of suit incurred herein; and

6. Such other and further relief as this Court deems just and proper.

Dated: September 19, 2014

SULLIVAN, HILL, LEWIN, REZ & ENGEL
A Professional Law Corporation

By: */s/ Jonathan S. Dabbieri*
James P. Hill
Jonathan S. Dabbieri
Elizabeth E. Stephens
Attorneys for Chapter 7 Trustee,
William A. Leonard, Jr. and Commercial
Mortgage Managers, Inc.